DONABED KINOIAN *vs.* ROBERT F. BRENNAN.

JUNE 22, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Condon, J. This action of trespass on the case for negligence was tried in the superior court and resulted in a verdict for the defendant. Thereafter the plaintiff filed a motion for a new trial which was denied by the trial justice. The case is here on plaintiff's bill of exceptions containing six exceptions to rulings excluding certain testimony and a seventh exception to the denial of the motion for a new trial.

The evidence shows that plaintiff was knocked down in East street, a public highway in the city of Pawtucket, by an automobile owned and operated by defendant. The accident occurred near the intersection of that street with Broadway at about 6 a.m. on December 13, 1948. The street was still damp from rain which had fallen earlier in the morning. The street lights were on and a yellow overhead blinker light on Broadway at the entrance to East street was operating.

Plaintiff testified that he was walking in East street in an easterly direction about two feet from the south curb because the sidewalk was muddy and it was better walking in the street. He further testified that when he was about ten feet

from Broadway defendant drove his automobile around the corner of Broadway and East street on his, plaintiff's, right side of East street and knocked him down.

Plaintiff's description of the sequence of events preceding the contact of the automobile with him leaves much to be desired from the viewpoint of an explanation as to how the accident happened. His best testimony on the point appears in the transcript as follows: "I go straight, looking in my front. I don't see any car. I go straight. The car come around the corner right on me. * * * I tried to jump away. As soon as I tried it, it hit me and knocked me down; hit my left leg and knocked me down." He testified further that he did not know in what part of the street he was after he was knocked down.

Defendant testified that shortly before 6 a.m. he was driving his automobile on his way to work northerly along Broadway at about 15 miles per hour; that as he approached the blinker light at East street he slowed down to between 10 and 12 miles per hour and proceeded to make a left turn into East street to his right of the center line thereof; that after he had turned but before he had fully strtightened out a·man appeared about 8 feet in front of him in the street and he veered to the left to avoid him, but the man ran in front of the automobile, collided with the right front fender and fell alongside the automobile with his feet on the street near the right front wheel and his head near the right front door. He further testified that he applied his brakes as soon as he saw the plaintiff; that he stopped his automobile on the right of the center line of East street; and that after the accident plaintiff was lying in the street about one foot away from the automobile and between it and the northerly sidewalk of East street. He estimated East street was 40 feet wide and Broadway 50 feet wide.

The above was substantially the only testimony as to how the accident happened. Two police officers, Norman J. Moreau and Vincent Majkut, were near the scene and each

saw the defendant driving his automobile northerly along Broadway but neither saw the accident. Patrolman Moreau testified that about 6 a.m. he was standing on Broadway near a police cruiser car talking to Officer Majkut; that the car was at the sidewalk on the west side of the street facing south about 10 feet from East street; that he saw defendant coming north up Broadway at about 20 to 25 miles per hour; that as he came alongside the cruiser car he slowed down to about 10 or 15 miles per hour; that he did not notice defendant turn the corner at East street but a few seconds thereafter he heard a noise like metal striking something hard; that after the accident defendant's car was stopped in the crosswalk on East street about 7 or 8 feet from the corner, more on the left side; that plaintiff was lying in the street between the right-hand side of defendant's car and the north side of East street. He estimated that East street was 25 feet wide and Broadway about 30 or 35 feet wide.

Officer Majkut testified that he was sitting in the cruiser car facing south on the west side of Broadway about 10 feet south of East street talking to Moreau; that he saw defendant's car coming north about 20 to 25 miles per hour; that it went by him at about that speed; that he could not see defendant slow down and did not see the accident, as it happened in back of him. He estimated that East street was about 30 feet wide and Broadway about 10 feet wider.

It is obvious from the testimony of the parties and those witnesses that there is a sharp conflict as to how the accident happened, the dimensions of the traveled part of the intersecting streets, the position of plaintiff in the highway before and after the accident, and whether defendant's car was stopped entirely to the right of the center line of East street. As to the latter facts the testimony of the plaintiff would place him, when he was hit, about 10 feet from Broadway, about 2 feet from the south sidewalk of East street, and between it and the left side of defendant's car, which

would then be entirely to the left of the center line of East street.

Defendant's testimony squarely contradicts that of plaintiff in these respects. He places his car to the right of the center line of East street and definitely locates the plaintiff as lying between the car and the north side of that street. Officer Moreau's testimony corroborates defendant substantially as to plaintiff's position in the street after the accident and also as to the fact that defendant slowed down after he had passed the cruiser car and before he made his left turn into East street. However, Moreau's testimony that defendant's car was stopped 7 or 8 feet from the corner, more on the left side of East street, is vague and indefinite. If he meant the southwest corner of East street and Broadway, then his testimony would be at some variance with that of defendant that his car was stopped entirely to the right of the center line. On the other hand if he meant the northwest corner it would tend to corroborate defendant's testimony. In any event on any reasonable view of Moreau's testimony it clearly does not corroborate plaintiff's testimony that he was about 2 feet from the south sidewalk of East street when he was hit by defendant's car. On the contrary it contradicts him.

In the circumstances the jury's problem was to decide which party was the more credible. Apparently they believed the defendant and concluded that the plaintiff had failed to prove his case by a fair preponderance of the credible evidence. In our view this was a reasonable conclusion. As the trial justice rightly said, the evidence presented a typical case for determination by a jury. From our perusal of the transcript we are of the opinion that he correctly performed his duty in passing upon plaintiff's motion for a new trial and that his ruling thereon was not clearly wrong. Plaintiff's seventh exception thereto is overruled.

We are also of the opinion that there is no merit in plaintiff's six exceptions to the exclusion of testimony. The first

five exceptions were to rulings on the following questions and were argued together. "Q. Can you tell us whether or not people were in the habit generally of walking in the curb there at that scene? A. I would say yes." The answer was stricken out on defendant's motion. "Q. Was it [the street] in the same condition as the sidewalk?" "Q. Now, insofar as the walking conditions were concerned, can you tell us the difference between the street and the sidewalk? A. The street is better walking conditions. I walk in the street myself." The second sentence is stricken out. "Q. In your police duties while you are pounding your beat there do you use the sidewalk or the street?" "Q. At the time of this accident—at or about the time this accident happened, did pedestrians generally use the sidewalk or the street?" Those questions were addressed to Moreau apparently for the purpose of showing there was a good reason for plaintiff to walk in the street and that he had a right to be there on the morning of the accident.

The evidence thus sought to be elicited was, among other reasons, neither relevant nor material to the issues on trial. As the trial justice observed in one of his rulings and as he later charged the jury, pedestrians have an equal right to the use of the highways with operators of vehicles thereon. Each is bound by the same standard of reasonable care not to injure the other and the care to be exercised by the pedestrian depends upon the hazard assumed in walking in the highway in the attending circumstances. *Belliveau* v. *Bozoian,* 46 R. I. 83; *Cunningham* v. *Walsh,* 53 R. I. 23; *Banewicz* v. *Sullivan,* 66 R. I. 494. There was therefore no question concerning plaintiff's right to be walking in the highway. The question was whether in using the highway he exercised reasonable care for his own safety considering the circumstances. Plaintiff's five exceptions to the exclusion of the above questions are, therefore, overruled.

Plaintiff's sixth exception is to the exclusion of the following question addressed to Officer Majkut: "Q. It got by you

at about that speed? A. Yes, sir." The answer was stricken on motion of the defendant. There was no valid objection to this testimony. The answer was consistent with the officer's previous testimony. He already had testified that he saw defendant's car about 10 or 15 feet away coming north on Broadway at about 20 or 25 miles per hour. He also had testified that the accident happened in back of his car and that he could not say whether defendant had slowed down after he had passed the cruiser car. However, the exclusion of this evidence did not harm plaintiff as the identical evidence was later admitted and it was made clear that while defendant's car was in Majkut's line of vision he did not see it slow down. The fact that the trial justice in referring in his rescript to that officer's testimony may have misconceived it has no effect upon whether or not the exclusion of the testimony in question could have prejudiced the jury against the plaintiff. Moreover we do not agree with plaintiff's interpretation of the trial justice's reference in the rescript. When he stated therein that Majkut "was not in a position to see the car slow down" he obviously meant after defendant's car had passed the cruiser car. Plaintiff's sixth exception is therefore overruled.

All of the plaintiff's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Aram A. Arabian,* for plaintiff.

*Francis V. Reynolds, Joseph V. Cavanagh,* for defendant.